Mr. Martin. Good morning, Your Honors, and may it please the Court. Reversal is required here for four independent reasons. First, the pervasive invasion of the attorney-client privilege, when combined with the injection of the private is not supported under the controlling statute as a matter of law. It's not supported as a matter of fact by the witness testimony. And finally, it's contradicted by the PASAR certifications that provide that the treatment here was medically necessary. Third, the forfeiture judgment also is not supported under the controlling statute. It's excessive and constitutionally impermissible at 190 times the actual harm. It seems like the first of your arguments is foreclosed by our precedent, in that we said there is no, this is Fifth Circuit Unit B, July 13, 1981, United States v. Melvin, there's no rule, per se rule, requiring dismissal of the indictment as a sanction for intrusion into the attorney-client relationship by government agents. We've said dismissal is plainly inappropriate as a remedy, absent demonstrable prejudice. And so the idea that this would be structural error just seems to me foreclosed by a long line of precedent. So two things on that, Your Honor. This Court does not have a case with the level of invasion of privilege that occurred here. Well, that's different. That's a different argument. It seems to me that arguing that it was really bad here may satisfy a prejudice standard, but the way you argued it as you opened as structural error is incompatible with that kind of argument. Well, Your Honor, two things on that. First, the pervasive misconduct itself under this Court's precedent in Balavan can support dismissal here, irrespective of whether we call it systemic error or not. But as I suggested, Your Honor, on the facts here, you have two things combined. You have the invasion of the privilege, number one, and you have the injection of the private prosecutorial interest, number two. And in combination, looking specifically at this Court's opinion in Spiker, for example, that does rise to the level of systemic error. We have also cited— The problem, it seems to me, though, is that if our precedents require a showing of actual prejudice, it seems to me that in your briefs you've put all your eggs in the basket of the idea that it is essentially structural error, and you really haven't made a case for actual prejudice. Your Honor, I disagree. Pointing specifically to pages five and six of the reply brief, you'll see the case for actual prejudice. In this case, the prejudice is inherent— You know, you have to make the argument in the blue brief. Well, Your Honor, it's—  No, no, Your Honor, it's in that brief as well. The prejudice came from the investigation that armed the government with information about Mr. Resforma's network, including specifically the Del Scalzo documents and the Bengio interviews, which Ms. Young conceded were used as part of the investigation, and more importantly, to explain the case to an expert witness who testified for the government. That is actual prejudice. Also, as this Court notes, the threat of prejudice is sufficient as well to support misconduct dismissal, and the government having that information from 69 boxes of privileged material that were reviewed, it creates the inherent threat of prejudice that it will be used and as the amici, high-ranking amici have noted, that prejudice sticks with the case. It taints the entire prosecution. And to come back to my original point, Your Honor, under the Supreme Court decisions starting with Berger, going to Brecht, going to Gonzales-Lopez, and even under Morrison, that sort of error is treated differently because it taints the integrity of the process and calls for this Court to exercise its inherent authority to dismiss. It seems to me that that would undermine our cases requiring actual prejudice if every time there's a privilege violation, it automatically taints the entire prosecution. Judge Pryor, I do not mean to suggest that this is automatic. I am talking about the specific facts of this case, the level of the intrusion. It's unprecedented. In Offshea, there was no prejudice that followed from, and even no privileged information conveyed. In DeLuca, it was the same. It was one email. But in the Balavan case, this Court said, if there's pervasive invasions, deliberate invasions, at a level that we're talking about here, that can independently support misconduct. And the U.S. Supreme Court... The issue about whether there was misconduct is not an issue, right? There was some misconduct. Totally agree with that. Yes. Totally agree with that. If it reaches the pervasive level... But the District Court also found that there was no prejudice, and I don't see where in your blue brief you challenged that finding. You made a different argument. No, the blue brief talks about the inherent prejudice that followed from the investigation... Inherent prejudice. That's not actual prejudice. Well, the reply brief explains the actual prejudice from the record as well, Your Honor. And that actual presence, excuse me, prejudice was present in the record when the disqualification motion was made. And let me... Is your argument that there were pieces of evidence used that shouldn't have been used, or more that the trial strategy and certain things were known that infected the trial in less explicit ways? It's both, Your Honor. The Bengio interviews and the preparation of the government's experts were actual use of reflected in the record. The strategy, of course, and the government's ability to shape its strategy is the second thing that combines with that, and that sticks with the case and affects the mechanism of trial, as the U.S. Supreme Court has said in cases, a long line of cases that show that this is a difference. The second thing, I want to come back to the injection of these private interests as well, Your Honor. They were injected by the government prosecutors through private representation to affect a decision on the merits in a criminal prosecution. That is unprecedented. And in Spiker, this court held that that error is incurable. It should have compelled an immediate new trial, consistent with the U.S. Supreme Court's... So your argument is that the prosecutor's defense against a motion to disqualify her is the basis for finding that she was an interest prosecutor? The basis for disqualifying her is that she was an interested prosecutor. What made her interested? The fact that she defended herself against a motion for disqualification? Well, she didn't have to defend herself against that, Your Honor. She injected herself into it through private attorneys who advanced her private interests. That was the threat to her career as the merits-based determination. You ever heard of United States v. Shagan? We found that the Southern District of Florida's failure to give notice and an opportunity to be heard with the possibility of representation of the prosecutors in their individual capacity from potential sanctions, that that was a violation of due process. So let me come back... Of course a lawyer has an individual interest in the practice of law and their reputation. Of course they have a right to counsel, don't they? But those private interests can't become a determiner on the merits of a motion in a criminal proceeding where disqualification is sought. What the prosecutor... Exactly what happened, the opposite of what we held in Shagan. We held it was a constitutional violation not to give them that kind of notice and opportunity to be heard. But Your Honor, once the basis of decision becomes the recognition of the private interests and the prosecutors are allowed to continue the prosecution, Spiker makes it clear that that's not curable. A new trial is required. And the reasoning in Spiker is analogous to this case. There was a threat to the prosecutors. They met the threat with their private interests and that is sufficient to create systemic error, particularly when it affects the merits of a motion to disqualify. A criminal defendant doesn't have to be subjected to a process that looks like that. Your Honors, let me turn to the other grounds of error that I mentioned. The restitution and forfeiture judgments here are not supported as a matter of law or fact. The restitution judgment based on Dr. Sifu's 1% guess and estimate has no substantiation as a matter of fact and it's contradicted as a matter of fact by the Passar certifications which show that the treatments were medically necessary. In addition, the law won't support restitution in this case. The underlying counts of conviction were kickbacks and money laundering. Those sustain no actual harm to the government. I thought that it was the defense counsel suggested the 1% figure. Your Honor, that is not a correct assessment of the record. Defense counsel in the colloquy cited had already said that the award of restitution was indefensible and not supportable as a result. It came down to the percentage figure offered which, by the way, was not 1%. Counsel was defending against an award that was going to be extraordinary and, again, as the reply brief points out, this was a defensive strategy, not a concession, not an admission, and there are no facts in the record to support the 1%. On the forfeiture judgment, it relates specifically to the absence of evidence of concealment money laundering. No witness testified to that link. Okay, Mr. Martin, you've saved three minutes for rebuttal. We'll hear from Mr. Crane. Thank you. Good morning, Your Honors. May it please the Court, Paul Crane on behalf of the United States. Let me begin with the motion to dismiss and motion to disqualify. Let me be very clear. The government has not and does not dispute the summation that Judge Scola gave at the end of those motions, which is at docket entry 975, and specifically at page 49, where he says, although the prosecution team operated in good faith, their execution of their duties was often sloppy, careless, clumsy, and ineffective. The government does not I say reckless. Your Honor, I don't Clumsy is maybe an understatement. I'm not here to challenge the description as reckless either. I think the government takes the mistakes that were made very seriously. It does not challenge Judge Scola's descriptions. Among other things, it has adopted and implemented new protocols regarding filter searches, including as this Court approved of in its In re Sealed Warrant case from last year. At the same time, as we've explained in our brief and as Judge Scola found, and for that matter, as the magistrate judge found, there was no demonstrable prejudice coming from this sloppy, careless, clumsy, or as Your Honor says, reckless behavior. Two things. One, I found it surprising that the attorney at issue stayed on the case. Is that typical where there's such reckless behavior? Your Honor, I would like to be responsive. I don't know if I can say whether it's typical or not. I believe that because there was no indication from the government's perspective and consistent with Judge Scola's finding of any bad faith or purposeful misconduct. Did Judge Scola have the ability to make that finding without holding his own evidentiary hearing? We would submit that he did, Your Honor. He gave several reasons in his order for why a finding of any sort of bad faith was inconsistent with lots of other evidence was in the record. At the same time, his primary finding on that issue was that it was unnecessary. That because there was no showing of actual prejudice or demonstrable prejudice whatsoever, it was frankly unnecessary. Whether there was bad faith or not becomes really an irrelevant issue because at the end of the day, it's the prejudice determination that matters. That's correct. Even if we thought he was wrong to say what he said about that without holding an evidentiary hearing, we'd still have to reach the prejudice determination. We completely agree with that, Your Honor. One way that we also know that is the magistrate who was the one who made those statements also found that there was no prejudice whatsoever that warranted the extreme remedies. Now, there were some remedies given of suppression of certain information or the agreement to not use certain information at trial. Again, as this court has held in its cases, suppression in the instances of intrusion of attorney-client privilege is the appropriate remedy in such circumstances. There's a few things I want to clarify as it relates to the record as it relates to prejudice and that supports the finding by both the magistrate and Judge Scola that there was no demonstrable prejudice. I'm not sure there's really, in the blue brief at least, any challenge to that finding. I read the argument as there doesn't have to be a showing. We agree with that reading, Your Honor. The closest that I, at least from my perspective, that they come is this suggestion that one of the witnesses, Mr. Baldwin, at trial was somehow improperly influenced. I would just direct the court to docket entry 1413, page 107. There, it makes clear that that witness, Mr. Baldwin, never saw or has never otherwise viewed these so-called Bengio notes or Descalzo documents at all. Otherwise, Your Honor, the government agrees that the primary argument made in the blue brief and by the amici was akin to structural error, which for the reasons you've said is inconsistent with this court's precedent. I don't know that the amici can preserve the argument about actual prejudice for the party. Oh, I agree with that, Your Honor, and I apologize if I misspoke. I think amici largely makes a similar structural argument, a structural error type argument. In looking at prejudice, do there have to be charges that resulted from the information or can it be more of a taint like Mr. Martin was describing? Well, it doesn't have to be only the additional charges. There was not any such additional charges here and the main indictment had already been returned even before the search of Eden Gardens. The government would say it's inconsistent with this court's precedent and Supreme Court precedent to just have purely speculative or inherent type prejudice, but there could be other forms of prejudice that Judge Scola found did not exist here and there was extensive testimony during the evidentiary hearing. I would direct the court in particular to docket entry 626, pages 180 to 209, explaining how all the information in these so-called Discasso documents, which again are two documents out of 179,000 that were seized, did not change the investigation lead to new leads, strength in the prosecution's case, used at trial, all of those could be examples of potential prejudice or actual prejudice short of there being new charges and that just simply isn't the case here. As Judge Scola also found in his order, there is no evidence that it provided any advantage to the government, among other reasons these documents were not inculpatory in any way. And just to sort of step back for a second, these two documents again out of 179,000 were not used at trial, were not viewed by any of the trial witnesses, and there's no suggestion by any party at any point in time that the government trial prosecutors viewed or saw any of the other allegedly privileged information that was seized during the Eden Garden search. And so this record just has absolutely no basis to find demonstrable prejudice or actual prejudice. If the court doesn't have any other questions, I would just, again, one sort of record clarification. Dr. Sifu did not say that there was 1%. There was testimony by a government witness of 10% of patients that received either services they didn't need or were otherwise inappropriate. Your Honor, the government agrees with your position that it was Defense Counsel who suggested the 1% figure. That's at docket entry 1439, pages 46 and 49. And Judge Scola at docket entry 1365, page 75, specifically found by repondents of the voluntary or not rendered medical services. So the suggestion that there was zero is just simply untenable under this record. Was Defense Counsel's suggestion of 1% made after the court had rejected his arguments? It was made after he rejected some of the arguments, particularly related to under which guidelines should govern. It was made during a discussion of trying to figure out what So when Defense Counsel made that 1% suggestion, it was based on how many patients were under the age of 50 at two particular facilities, and it was in a discussion amongst the parties about what loss amount to use under the guidelines. If the court has no further questions, we would rest on our briefs for the remaining issues. Thank you, Mr. Crane. Mr. Markey, you have three minutes. Let me start with the misconduct and come back to this court's opinion in Balavan, which says specifically that a pattern of widespread or continuous misconduct can support dismissal. There was a pattern of widespread and continuous misconduct. You have to have a showing of actual prejudice. And the district court found and offered reasons why there wasn't actual prejudice, and you haven't explained in your brief why that was wrong, because you have made an argument that it was inherently prejudicial. So Your Honor, the Balavan case does not link. It talks about actual prejudice, threatened prejudice, and a third prong, which is the pervasive misconduct. The actual prejudice standard comes from the U.S. Supreme Court's decision in Morrison, as this court knows. And in footnote four in Morrison, the court made the same distinction. It noted that it was not a case of extensive misconduct. This is different, and it should be treated differently. United States v. Moreno, 1979 Fifth Circuit, in the case of even the most egregious prosecutorial misconduct, the dismissal of an indictment in such a case must depend upon a showing of actual prejudice to the accused. So I would point this court to Balavan in response, but also reflect that there was actual prejudice here. It was shown through the Bengio documents. The Bengio documents resulted in two facilities that ended up in the indictment. The government's lawyers conceded the investigation was used, and to point to Judge Pryor's question, that that formulated their strategy. It doesn't have to result always in the introduction of evidence to reach the level of prejudice when you have the volume of misconduct that occurred here and the invasion of the privilege to this extent. On the restitution, counsel had already argued there was no factual support for the restitution award in the record because of the Passar certifications and because there was only speculation by the government witnesses, any of them, about the harm. The court's finding of fact isn't supported by any specific evidence, and there isn't any specific evidence. The forfeiture suffers from the same problem. There's no link to concealment in that exhibit that Mr. Patron talked about. He wasn't a fact witness on money laundering. He couldn't connect the movement of the funds to money laundering, and this court has made it clear over and over again that that is needed. I'll finally close with the clemency warrant, Your Honor, which we also agree, for the reasons noted in the briefing, should compel a dismissal of this prosecution without a new trial. Thank you. I think the clock's got you, Mr. Martin. We're going to move to our next case.